IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) ) ) |
| v. | ) ) Criminal Case No. 23-cr-00094-LKG |
| DARYLE ERIC MORGAN, | ) ) Dated:  December 9, 2024 |
| Defendant. | ) ) ) |

### MEMORANDUM OPINION AND ORDER ON PRETRIAL MOTIONS

**I.    INTRODUCTION**

The Defendant, Daryle Eric Morgan, has filed the following pretrial motions in the above-captioned criminal matter: (1) a motion to suppress tangible and derivative evidence obtained from the warrantless December 7, 2022, traffic stop and search of his vehicle (ECF No. 28); (2) a motion to suppress statements obtained during an unlawful interrogation (ECF No. 29); (3) a motion to suppress tangible and derivative evidence obtained from unlawful search warrants (ECF No. 30); and (4) a motion *in limine* to cross-examine law enforcement witnesses about prior misconduct at hearing on motion to suppress (ECF No. 61).[1]  The Defendant's motion to suppress tangible and derivative evidence obtained from the warrantless December 7, 2022, traffic stop and search of his vehicle is fully briefed.  ECF Nos. 28, 40 and 43.  The Court held a hearing on this motion on December 4, 2024.  ECF No. 75.  For the reasons that follow, and for the reasons stated during the December 4, 2024, hearing, the Court: (1) **GRANTS-IN-PART** the Defendant's motion to suppress (ECF No. 28); (2) **SUPPRESSES** the evidence obtained from the warrantless December 7, 2022, search of the Defendant's vehicle; (3) **GRANTS-IN-PART and DENIES-IN-PART** the Defendant's motion *in limine* to cross-examine law enforcement witnesses about prior misconduct during the hearing on his motion to suppress (ECF No. 61); (4) **DENIES-AS-MOOT** the Defendant's motion to suppress statements

---

[1] The Defendant has informed the Court that his motion to suppress statements obtained during an unlawful interrogation (ECF No. 29) and motion to suppress tangible and derivative evidence obtained from unlawful search warrants (ECF No. 30) are moot.  ECF No. 43 at 1.  The Court resolved the Defendant's motion *in limine* during the December 4, 2024, hearing.  ECF No. 75.

obtained during an unlawful interrogation (ECF No. 29); and (5) **DENIES-AS-MOOT** the Defendant's motion to suppress tangible and derivative evidence obtained pursuant to unlawful search warrants (ECF No. 30).

## II.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY[2]

On March 16, 2023, a Grand Jury sitting in the District of Maryland issued an Indictment, charging the Defendant, Daryle Eric Morgan, with one count of felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1).  ECF No. 1.  On June 21, 2023, the Defendant appeared before the Court for an initial appearance, arraignment and detention hearing, during which he pled not guilty to the offense charged.  ECF No. 7.

The December 7, 2022, Traffic Stop

As background, the charge in this case arises from a December 7, 2022, traffic stop, during which Prince George's County, Maryland law enforcement officers recovered a loaded handgun from the center console of the Defendant's vehicle, following a search of the vehicle. *See generally* ECF No. 40.  Specifically, on December 7, 2022, at approximately 9:42 p.m., several officers from the Prince George's County Police Department were on patrol in the area of 1159 Southview Drive in Oxon Hill, Maryland.  ECF No. 28 at 2.  The Prince George's County Police Department "considers this neighborhood to be a targeted hotspot due to the high level of violent crime" there.  ECF No. 40 at 2.

While on patrol in the area, Corporal Thomas Waters observed a white Cadillac SUV with its headlights on and engine running, parked in the parking lot of the Southview Apartment complex.  *Id*.  Corporal Waters also observed that the vehicle was parked in a marked fire lane that prominently featured yellow striping, a yellow curb and posted fire lane signs, in violation of Prince George's County Code of Ordinances § 11-277.[3]  *Id*.  And so, based on the observed traffic violation, Corporal Waters and other officers approached the Defendant's vehicle to conduct a traffic stop.  *Id*.

---

[2] The facts in this memorandum opinion and order are derived from the Indictment; the Defendant's motion to suppress; the Government's opposition thereto; the testimony during the December 4, 2024, hearing; and the parties' hearing exhibits.  ECF Nos. 1, 28, 40, 75, 76 and 77.

[3] The Defendant concedes that his vehicle was "standing by a yellow curb in an area of the private parking lot marked with yellow diagonal striped lines."  ECF No. 28 at 2.

During the December 4, 2024, hearing, Michelle Eidel, an investigator for the Officer of the Federal Public Defender for the District of Maryland, provided testimony about the layout of the parking lot at the Southview Apartment complex. ECF No. 75; *see* ECF No. 77, Def. Exhs. 211-215. Ms. Eidel testified that this parking lot is located directly off Southview Drive, which is a public roadway, and that the parking lot has a single loop with no bearings of a public road. ECF No. 75. Ms. Eidel also testified that there is only one access and egress point to the parking lot that abuts Southview Drive, and that the parking lot has signs stating that this area is private property and unauthorized vehicles will be towed. *Id*.; *see* ECF No. 77, Def. Exhs. 219-221. Photographs of the parking lot confirm Ms. Eidel's testimony and also show that there are no traffic signs or driving lane markings in the parking lot. ECF No. 77, Def. Exhs. 211-215, 219-221..

During the December 4, 2024, hearing, Corporal Waters testified that he parked his cruiser in front of the Defendant's vehicle and then observed the Defendant, who was seated in the driver's seat of the vehicle, pass a glass bottle to a female in the front passenger seat. ECF No. 75; *see also* ECF No. 40 at 3. Corporal Waters also testified that he suspected that the glass bottle contained alcohol. ECF No. 75.

Corporal Waters then exited his cruiser and approached the driver's side of the Defendant's vehicle. ECF No. 40 at 3. Corporal Waters testified that, when the Defendant rolled down the vehicle's driver-side window, he smelled a strong odor of alcohol emanating from the vehicle's passenger compartment. ECF No. 75. And so, Corporal Waters testified that, based on his observations, he suspected that the Defendant was in violation of Md. Transportation Code Ann. § 21-903(c), which provides that "a driver of a motor vehicle may not consume an alcoholic beverage . . . in a passenger area of a motor vehicle on a highway." *Id*.; *see* Md. Transportation Code Ann. § 21-903(c).

Given this, Corporal Waters began to question the Defendant and the vehicle's passenger, Eleassia Kincaid, and he asked them whether they lived at the Southview Apartment complex. ECF No. 40 at 3. Ms. Kincaid stated that she did. ECF No. 28 at 3.

Upon Corporal Waters' request, the Defendant provided Corporal Waters with his driver's license. ECF No. 40 at 3. Shortly thereafter, Corporal Waters asked the Defendant to exit the vehicle and conducted a patdown of the Defendant to check for weapons, which revealed no weapons or contraband on the Defendant's person. ECF No. 76, Govt. Exh. 3; *see also* ECF

No. 28 at 3; ECF No. 40 at 3-4.  When Corporal Waters asked the Defendant if there was alcohol in the vehicle, the Defendant told him that there was.  ECF No. 76, Govt. Exh. 3; *see also* ECF No. 28 at 3; ECF No. 40 at 4.  During the December 4, 2024, hearing, Corporal Waters also testified that the Defendant was cooperative with his requests and instructions and that he did not witness the Defendant consume the contents of the glass bottle.  ECF No. 75.  In addition, Corporal Waters testified that he did not ask the Defendant to submit to a field sobriety test.  *Id*.

    Lastly, Corporal Waters testified that, based on the Defendant's confirmation that alcohol was present in his vehicle, he concluded there was probable cause that the Defendant was violating Md. Transportation Code Ann. § 21-903(c).  *Id*.; ECF No. 40 at 11.  And so, Corporal Waters informed the Defendant that "officers could search his vehicle because there was contraband (alcohol) present in the vehicle[,] and [the Defendant] is not permitted to drink in a car."  ECF No. 40 at 4.  Two officers then conducted a search of the Defendant's vehicle.  *Id*. at 4-5; *see* ECF No. 76, Govt. Exh. 3.

During the search, the officers recovered a Stoeger Model STR-9C, 9mm handgun pistol loaded with approximately 12 rounds of 9mm ammunition.  ECF No. 40 at 4-5.  The handgun and ammunition are the subject of the one-count Indictment in this case for felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1).  ECF No. 1; ECF No. 40 at 1.  The officers also recovered a glass bottle of tequila on the passenger side floorboard.  ECF No. 40 at 4.  And so, the officers placed the Defendant in handcuffs, read him his *Miranda* rights and transported him to the police station.  *Id*. at 5; ECF No. 28 at 3.

Relevant Procedural History

On October 13, 2023, the Defendant filed a motion to suppress tangible and derivative evidence obtained from the warrantless December 7, 2022, traffic stop and search of his vehicle.  ECF No. 28.  On November 17, 2024, the Government filed a response in opposition to the Defendant's motion to suppress.  ECF No. 40.  On December 1, 2023, the Defendant filed a reply brief.  ECF No. 43.  On December 4, 2024, the Court held a hearing on the Defendant's motion to suppress.  ECF No. 75.

The Defendant's motion to suppress having been fully briefed, the Court resolves the pending motion.

### III.   STANDARDS FOR DECISION

#### A.   Traffic Stops

The Supreme Court has held that, when law enforcement stops an automobile and detains the vehicle's occupants, the stop constitutes a seizure under the Fourth Amendment. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979); *United States v. Digiovanni*, 650 F.3d 498, 506 (4th Cir. 2011). Warrantless Fourth Amendment seizures are "*per se* unreasonable." *Coolidge v. New Hampshire*, 403 U.S. 443, 454. But it is well-established that an officer may conduct a traffic stop, if the officer has reasonable suspicion that a traffic violation has occurred, or that criminal activity is afoot.[4] *Berkemer v. McCarty*, 468 U.S. 420, 439 (1984); *see also United States v. Arvizu*, 534 U.S. 266, 273 (2002).

Given this, an officer's decision to effectuate a traffic stop is evaluated objectively; any ulterior motive for making the stop is irrelevant. *Whren v. United States*, 517 U.S. 806, 813 (2002); *see also Ohio v. Robinette*, 519 U.S. 33, 39 (1996). An officer may stop the vehicle "for long enough to issue the driver a citation and determine that the driver is entitled to operate" the vehicle. *United States v. Branch*, 537 F.3d 328, 337 (4th Cir. 2008). But, if the officer seeks to prolong the traffic stop, to allow for investigation into matters beyond the scope of the initial stop, the officer must have reasonable suspicion of other criminal activity or the driver's consent. *Id.* at 336. And so, the Court considers the totality of the circumstances when determining an officer's reasonableness. *United States v. Kehoe*, 893 F.3d 232, 237 (4th Cir. 2018) (citing *Arvizu*, 534 U.S. at 273).

#### B.   Warrantless Searches

With limited exceptions, an officer must have probable cause to believe that a vehicle contains evidence of criminal activity before the officer may search the vehicle. *United States v. Patiuka*, 804 F.3d 684, 690 (4th Cir. 2015); *see also Carroll v. United States*, 267 U.S. 132, 158-

---

[4] The standard for reasonable suspicion is "less demanding" than that for probable cause; it requires "at least a minimal level of objective justification." *United States v. Perkins*, 363 F.3d 317, 321 (4th Cir. 2004). Given this, an officer has reasonable suspicion to make an investigatory stop of a vehicle when there are "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the belief that criminal activity is afoot." *Terry v. Ohio*, 392 U.S. 1, 21 (1968). And so, the Fourth Circuit has held that, if an officer observes a vehicle commit a traffic violation, he is justified in detaining the offending vehicle. *United States v. Branch*, 537 F.3d 328, 335 (4th Cir. 2008).

5

59 (1925) ("[A] warrantless search of a vehicle is not unreasonable, and does not violate the Fourth Amendment, if the police have probable cause to believe that the vehicle has contraband."). The Supreme Court has held that probable cause "exist[s] where the known facts and circumstances are sufficient to warrant a [person] of reasonable prudence in the belief that contraband or evidence of a crime will be found." *Ornelas v. United States*, 517 U.S. 690, 696 (1996).

### IV. ANALYSIS

The Defendant has filed motions: (1) to suppress tangible and derivative evidence obtained from the warrantless December 7, 2022, traffic stop and search of his vehicle (ECF No. 28); (2) to suppress statements obtained during an unlawful interrogation (ECF No. 29); (3) to suppress tangible and derivative evidence obtained from unlawful search warrants (ECF No. 30); and (4) to cross-examine law enforcement witnesses about prior misconduct during the December 4, 2024, hearing (ECF No. 61). The Court primarily addresses the Defendant's motion to suppress tangible and derivative evidence obtained from the December 7, 2022, traffic stop and search of his vehicle in this memorandum opinion, because his remaining motions are either moot, or have been previously resolved by the Court.

In his motion to suppress tangible and derivative evidence obtained from the warrantless December 7, 2022, traffic stop and search of his vehicle, the Defendant seeks to suppress the firearm and ammunition recovered from his vehicle, upon the grounds that: (1) the officers unlawfully seized him during the initial warrantless traffic stop; (2) the officers unlawfully seized him to investigate the presence of alcohol; (3) the officers unlawfully seized him to investigate his vehicle's window tint; and (4) even if the officers lawfully stopped him, the warrantless search of his vehicle violates the Fourth Amendment. ECF No. 28 at 4-15. And so, the Defendant argues that any tangible and derivative evidence obtained as a result of the December 7, 2022, traffic stop and search of his vehicle must be suppressed. *Id*. at 15-16.

The Government counters that the suppression of the evidence recovered from the Defendant's vehicle is not warranted in this case, because: (1) the officers had reasonable suspicion to make the initial stop of the Defendant's vehicle; (2) the officers lawfully continued the stop of the Defendant's vehicle, given their reasonable suspicion that he had consumed alcohol and was about to drive, or had just driven, "on a highway;" and (3) the officers had

probable cause to search the Defendant's vehicle. ECF No. 40 at 5-12. And so, the Government requests that the Court deny the Defendant's motion to suppress. *Id*. at 13.

For the reasons that follow, the evidence before the Court shows that the officers had reasonable suspicion to conduct the investigatory traffic stop of the Defendant's vehicle, because they observed the Defendant's vehicle parked in a marked fire lane, in violation of Prince George's County Code of Ordinances § 11-277. But, the evidence before the Court also shows that the officers lacked reasonable suspicion and/or probable cause to believe that the Defendant was consuming an alcoholic beverage "in a passenger area of a motor vehicle on a highway," in violation of Md. Transportation Code Ann. § 21-903(c), to justify continuing the traffic stop and searching the Defendant's vehicle. And so, the Court: (1) GRANTS-IN-PART the Defendant's motion to suppress and (2) SUPPRESSES the evidence obtained from the warrantless December 7, 2022, search of the Defendant's vehicle.

### A. The Court Grants The Defendant's Motion To Suppress Evidence
#### 1. The Initial Traffic Stop Was Supported By Reasonable Suspicion

As an initial matter, the Court is satisfied that the initial investigatory traffic stop of the Defendant's vehicle was lawful, because the evidence before the Court shows that law enforcement officers observed the Defendant's vehicle parked in a marked fire lane, in violation of Prince George's County Code of Ordinances § 11-277. It is well-established that an officer may conduct a traffic stop if the officer has reasonable suspicion that a traffic violation has occurred, or that criminal activity is afoot. *Berkemer v. McCarty*, 468 U.S. 420, 439 (1984); *see also United States v. Arvizu*, 534 U.S. 266, 273 (2002). In this case, there is no dispute that the Defendant's vehicle was parked in such a marked fire lane in the Southview Apartment complex's parking lot. ECF No. 28 at 2; ECF No. 40 at 2. It is also undisputed that Prince George's County Code of Ordinances § 11-277 prohibits a vehicle from being parked in a fire lane. *See* ECF No. 40 at 2. Given this, Corporal Waters and the other officers on the scene had reasonable suspicion that the Defendant had committed a traffic violation, and were thus justified in effectuating an investigatory traffic stop.

#### 2. The Officers Did Not Have Reasonable Suspicion Or Probable Cause To Believe That The Defendant Was Violating Section 21-903(c)

The evidence before the Court also shows, however, that Corporal Waters did not have reasonable suspicion of another crime, to justify continuing the traffic stop involving the

Defendant's vehicle. It is well-established that, if an officer seeks to prolong a traffic stop, to allow for investigation into matters beyond the scope of the initial stop, the officer must have reasonable suspicion of other criminal activity or the driver's consent. *United States v. Branch*, 537 F.3d 328, 336 (4th Cir. 2008).

Here, the Government argues that Corporal Waters had reasonable suspicion that the Defendant was violating Md. Transportation Code Ann. § 21-903(c), which provides that "a driver of a motor vehicle may not consume an alcoholic beverage . . . in a passenger area of a motor vehicle on a highway." ECF No. 75; *see also* ECF No. 40 at 10-11; Md. Transportation Code Ann. § 21-903(c). In this regard, Maryland law defines a "highway" to mean:

> (1) The entire width between the boundary lines of any way or thoroughfare of which any part is used by the public for vehicular travel, whether or not the way or thoroughfare has been dedicated to the public and accepted by any proper authority; and
>
> (2) For purposes of the application of State laws, the entire width between the boundary lines of any way or thoroughfare used for purposes of vehicular travel on any property owned, leased, or controlled by the United States government and located in the State.

Md. Transportation Code Ann. § 11-127. And so, this Court has interpreted the term "highway" to "include[] only public streets, roads, or highways." *United States v. Brooks*, 679 F. Supp. 3d 225, 234 (D. Md. 2023).

In determining whether the continuation of the traffic stop and the subsequent search of the Defendant's vehicle comport with the Fourth Amendment, the Court will credit Corporal Waters' testimony that: (1) he saw the Defendant pass a glass bottle, which he believed contained alcohol, to Ms. Kincaid, who was seated in the vehicle's front passenger seat; and (2) he, subsequently, smelled a strong odor of alcohol emanating from the passenger compartment of the Defendant's vehicle. ECF No. 75. The Court will also credit Corporal Waters' testimony that the Defendant told Corporal Waters that there was alcohol in the vehicle. *Id*.; ECF No. 76, Govt. Exh. 3.

But the evidence before the Court shows that Corporal Waters lacked a reasonable suspicion that the Defendant was violating Md. Transportation Code Ann. § 21-903(c), because the Defendant's vehicle was not on a highway during his encounter with law enforcement. As discussed above, the undisputed evidence shows that the Defendant's vehicle was parked, with

its headlights on and engine running, in a fire lane located in the parking lot of the Southview Apartment complex. ECF No. 40 at 2.

The evidence before the Court also shows that the parking lot in question abuts Southview Drive, which is a public roadway, but that the parking lot is not a public road. ECF No. 75; *see* ECF No. 77, Def. Exhs. 211-215. Notably, Ms. Eidel's testimony and related photographs of the parking lot in question make clear that: (1) there is only one access and egress point to the parking lot; (2) there are signs stating that the parking lot is private property and that unauthorized vehicles will be towed; and (3) there are no traffic signs or traffic lanes in the parking lot. ECF No. 75; *see* ECF No. 77, Def. Exhs. 219-221.

Given this unrebutted evidence, Corporal Waters could not have had a reasonable suspicion that the Defendant was violating Md. Transportation Code Ann. § 21-903(c), by consuming alcohol while driving on a highway, to justify continuing the traffic stop. Nor could Corporal Waters have had probable cause to believe the Defendant was violating this Maryland law to justify the warrantless search the Defendant's vehicle.

The Government's argument that Corporal Waters had probable cause to search the Defendant's vehicle, because the Defendant was about to drive onto a highway, is also unconvincing. ECF No. 40 at 10-11; *see* also *United States v. Williams*, 2019 WL 4415540 (D. Md. Sept. 16, 2019); *United States v. Junkins*, 860 F. App'x 297, 303 (4th Cir. 2021) (holding that officers who did not observe a defendant operate a vehicle nonetheless had reasonable suspicion to stop the defendant for an expired registration after discovering the car parked in the parking lot of a convenience store on a public highway with its engine running). There is no evidence before the Court to show that Corporal Waters believed that the Defendant had driven, or was about to drive (while consuming alcohol) on a public road. In fact, Corporal Waters testified that he never observed the Defendant driving his vehicle. ECF No. 75; *see also Brooks*, 679 F. Supp. 3d at 235 (citing *United States v. Sanders*, 954 F.2d 227, 230 (4th Cir. 1992)) (observing "that the presence of a car in a private apartment complex parking lot, even one that was being driven in that parking lot, does not provide evidence that it [had been] driven on a public road or highway").

Given this, the totality of the circumstances in this case show that Corporal Waters neither had reasonable suspicion, nor probable cause, to believe that the Defendant had committed another crime, to justify the continuation of the traffic stop and the warrantless search

of the Defendant's vehicle.  And so, the Court will GRANT the Defendant's motion to suppress and SUPPRESS the evidence obtained from the warrantless December 7, 2022, search of the Defendant's vehicle.

## V.        CONCLUSION

For the foregoing reasons, the Court:

(1) **GRANTS-IN-PART** the Defendant's motion to suppress tangible and derivative evidence obtained from the warrantless December 7, 2022, traffic stop and search of his vehicle (ECF No. 28);

(2) **SUPPRESSES** the evidence obtained from the warrantless December 7, 2022, search of the Defendant's vehicle;

(3) **GRANTS-IN-PART and DENIES-IN-PART** the Defendant's motion *in limine* to cross-examine law enforcement witnesses about prior misconduct at hearing on motion to suppress (ECF No. 61);

(4) **DENIES-AS-MOOT** the Defendant's motion to suppress statements obtained during an unlawful interrogation (ECF No. 29); and

(5) **DENIES-AS-MOOT** the Defendant's motion to suppress tangible and derivative evidence obtained pursuant to unlawful search warrants (ECF No. 30).

The parties shall **MEET AND CONFER** and **FILE** a joint status report **on or before January 9, 2025**, stating their respective views regarding how this matter should proceed.


**IT IS SO ORDERED.**

                                                                s/Lydia Kay Griggsby
                                                                LYDIA KAY GRIGGSBY
                                                                United States District Judge